# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO SALAS,<br><br>    Petitioner,<br><br>    v.<br><br>M.D. BITER,<br><br>    Respondent. | Case No. 1:15-cv-00831-NONE-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITIONER'S MOTION TO AMEND<br><br>(ECF No. 56) |

Petitioner Pablo Salas is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner has moved to amend his petition to include a newly exhausted claim challenging the robbery-murder special circumstance. For the reasons stated herein, the undersigned recommends denying the motion to amend.

**I.**

**FACTUAL BACKGROUND[1] & PROCEDURAL HISTORY**

On April 26, 2010, the victim, Amber Kelch, invited Casica over to her house by text message, noting her live-in boyfriend would be leaving for work that evening and would be gone for four days. Casica responded he was bringing his "homie" with him. During the evening hours, Casica and Salas arrived at the victim's home in Bakersfield. The victim's teenage son Tim recalled two men coming over to the house that evening, and he allowed them inside while the victim was in the shower. Tim then went to his room and fell asleep while listening to music through headphones. He fell asleep sometime after 11:00 p.m. and did not wake

---

[1] The Court relies on the California Court of Appeal's April 9, 2014 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

1

during the night. Although he did not know the men at the time, Tim subsequently identified Casica in photographic lineups. Tim recalled his father, Michael Shawn Lovett, had two AR–15 style rifles at the time, which he often took to work with him.

Around midnight, Gilfred Cachola, the victim's drug dealer, delivered approximately $40 worth of methamphetamine to the victim at her home. When he dropped off the drugs he noticed two men at the victim's house. Subsequently, Michael Zimmerman began exchanging text messages with Salas, whom he knew as Sikes, regarding providing Salas with a ride. Zimmerman ultimately received directions to pick up Salas near the victim's home. Salas stated he wanted to "reup," which meant to get more drugs. Zimmerman drove Salas around town for about an hour and then dropped him off where he originally had picked him up.

Between 4:00 a.m. and 5:00 a.m. a woman Kassie Thompson knew as Dreamer asked her for a ride to pick up two men. Dreamer was very nervous at the time. Thompson drove Dreamer to the victim's house in her truck as directed by Dreamer, who was on the phone with someone providing directions. When they arrived at the victim's house, Casica and Salas emerged and put a rifle case in the back of the truck. The men also had a backpack. Defendants got into the truck and Thompson drove them back to her apartment where they removed the rifle case and backpack from the truck and parted ways. Salas told Thompson he was going to sell a PlayStation3 and give her money for gas for picking them up.

A few days later Casica, whom Thompson only knew by his moniker, Monster, showed her a picture of himself holding a rifle with another rifle visible in the background. He told her he had sold the guns for $780 although he had wanted $1,000 for them. Thompson also saw Casica with a handgun a few days after the murder.

Angela Aguilar, who goes by the name Dreamer, is Casica's girlfriend and the mother of one of Casica's children. Aguilar knows Casica is known as Monster. She testified she never asked Thompson for a ride or went with Thompson to pick up Casica and Salas. During the relevant time period, Aguilar lived with Marene Grimaldo, Salas's sister. There were times when both Salas and Casica would be at her apartment visiting, but the two never really talked to each other.

Sometime before 10:00 a.m., the victim's son woke up and went to check on his mother since she did not wake him for school. He found her lying face down on her bed. He went to a neighbor's house for help and also called his father.

Bakersfield police officer Brian Looney responded to the victim's home and found her lying face down on the bed, deceased. The victim died from a single gunshot wound to the head that entered above her left ear. There were a number of papers on a tray on the bed, next to the victim's leg. Detective Michael Hale inspected the home after the murder and noted one of the papers found next to the victim had the words "Mr. Monster," a symbol known as a "kanpol," and the words "SSBKS" and "Southgate Lokos." Casica's fingerprints were on this paper.

In addition, Hale found baggies of methamphetamine in a case on the nightstand and noted the victim had a methamphetamine pipe in one hand and a lighter in the other. There were three blue cups with liquid located on a dresser in the bedroom, and a spent .380 shell casing under the bed. The house did not appear in disarray, and there were no signs of forced entry anywhere in the home. The detective also

2

> noticed an ammunition case with numerous .223–caliber rounds of ammunition on the floor in the front room of the house.
>
> Casica's fingerprints were on the papers found next to the victim as well as on one of the blue cups and on the ammunition box. Salas's fingerprints were also on one of the blue cups. The victim's fingerprints were on the third blue cup. No fingerprints were located on the shell casing.
>
> Michael Shawn Lovett was the victim's live-in boyfriend and father of her child. At the time of the homicide he owned two AR–15 rifles. The .223 ammunition was also his and was for the rifles. He worked in an oil field and often left home for five days at a time to work. He left the home between 7:00 and 7:30 p.m. on the night of April 26th to go to work. He kept his two guns in a single rifle case, which he left under the bed, before going to work on the day of the murder. He also owned several PlayStation video game systems. Both rifles, the rifle case, and a PlayStation3 system were missing after the murder. Lovett viewed People's exhibit 12, a photograph of Casica holding a rifle with another visible in the background and noted both guns looked like his. In addition, a rifle case in the photo looked like his missing gun case.
>
> Detective Richard Dossey downloaded information from Casica's cellular telephone after Casica was arrested. People's exhibit 12 was a photograph on that phone, and the electronic information associated with this picture established the photograph was taken on April 27, 2010, at 3:41 p.m. In addition, Detective Dossey noted Casica had an entry in his contacts for a "Pablo" with a phone number associated with Salas. Subsequently, Detective Hale performed a search of a residence at an address Casica frequented. He found numerous items of graffiti at the residence with the markings "Mr. Monster," "SSBKS," "SSL," and "X3." In addition, he found "Bakers" written on a garbage can under the word "trash." A search of residences associated with Salas revealed no gang graffiti or indicia.
>
> Grace Barela, Casica's sister, was the victim's best friend. She had introduced Casica to the victim and took him to the victim's home approximately a week before the murder. She recalled the victim sometimes talked about her boyfriend's guns.

People v. Casica, 2014 WL 1386677, at *1–3 (footnote omitted).

In 2011, Petitioner was convicted in the Kern County Superior Court of first-degree murder, robbery, and active participation in a criminal street gang. The jury found to be true two special circumstance allegations: that the murder was committed while Petitioner was engaged in a robbery ("robbery-murder special circumstance" or "felony-murder special circumstance"), and that the victim was intentionally killed while Petitioner was an active participant in a criminal street gang and the murder was carried out to further the activities of the criminal street gang ("gang-murder special circumstance"). The jury also found true enhancement allegations of firearm use and commission of the offenses for the benefit of a criminal street gang. Petitioner

3

was sentenced to a term of life without the possibility of parole, plus 25 years to life. On appeal, the California Court of Appeal, Fifth Appellate District, reversed the gang participation offense conviction and ordered a $200 parole revocation fine to be stricken. The court affirmed the judgment in all other respects. People v. Casica, No. F063191, 2014 WL 1386677, at *37 (Cal. Ct. App. Apr. 9, 2014). Petitioner's petition for rehearing was denied. (Mot. to Amend Ex. K, at 95,[2] ECF No. 58-12). The California Supreme Court denied Petitioner's petition for review on July 23, 2014. (Id. Ex. L, ECF No. 58-13).

On June 1, 2015, Petitioner filed a federal petition for writ of habeas corpus in this Court. Therein, Petitioner raised three claims for relief: (1) that there was insufficient evidence to support the gang-murder special circumstance and the appellate court erroneously declined to rule on this issue because a reversal would not change his sentence; (2) that after ruling that the defense failed to make a prima facie case of racial discrimination in the prosecution's exercise of peremptory challenges of certain jurors, the trial court invited the prosecutor to comment on the reasons for striking said jurors and improperly granted the request to file the reasons under seal; and (3) that the trial court erroneously denied Petitioner's motion to sever his trial. (ECF No. 1).

On December 31, 2015, the undersigned issued findings and recommendation to dismiss Petitioner's first claim for relief and deny the petition. (ECF No. 20). With respect to Petitioner's first claim for relief, the undersigned stated:

> Section 2254(a)'s language "explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." Bailey, 599 F.3d at 980. That is, the remedy that the petitioner seeks should "directly impact—and [be] directed at the source of the restraint on—his liberty." Id. at 981.
>
> California requires a jury to find as true the existence of one or more enumerated special circumstances beyond a reasonable doubt in order to impose a sentence of life without the possibility of parole for a defendant found guilty of first-degree murder. Cal. Pen. Code §§ 190.2, 190.4. The California Supreme Court has stated that "special circumstances are *sui generis*—neither a crime, an enhancement, nor a sentencing factor" and has rejected the "unfounded assumption that special circumstances should be treated as being identical to criminal offenses in all contexts." People v. Montes, 58 Cal.4th 809, 874 (2014) (denying claim that special circumstance finding must be reversed for being necessarily included within another special circumstance) (quoting People v. Garcia, 36 Cal.3d 539, 552 (1984)).

---

[2] References to page numbering are to ECF page numbering for documents filed electronically in CM/ECF, but to Bates numbering for the exhibits filed in support of the motion to amend (ECF No. 58).

> The jury in Petitioner's case found to be true the robbery-murder special circumstance and the gang-murder special circumstance. At sentencing, the trial court imposed Petitioner's sentence of life without the possibility of parole based solely on the robbery-murder special circumstance. Although the court had stated earlier in the sentencing proceeding that the jury had found to be true "the PC 190.2(a)(22), special circumstance, murder while active member of a criminal street gang," the court did not mention the gang-murder special circumstance when sentencing Petitioner on the first-degree murder count. (LD 30 at 3117, 3124). Moreover, both the minute order of the sentencing proceeding and the abstract of judgment do not include the gang-murder special circumstance and only reflect the robbery-murder special circumstance.³ (LD 6 at 1621-22, 1629-32).
>
> As stated above, special circumstance findings do not constitute separate criminal offenses. Although the jury found the gang-murder special circumstance to be true beyond a reasonable doubt, Petitioner was not convicted of a separate criminal offense and the court did not impose the sentence of life without the possibility of parole based upon the gang-murder special circumstance. There is no nexus between Petitioner's claim that the appellate court erred in declining to rule whether there was sufficient evidence to support a finding on the gang-murder special circumstance and the unlawful nature of Petitioner's custody because Petitioner is in custody for life without the possibility of parole based solely on the robbery-murder special circumstance. As the required nexus between Petitioner's gang-murder special circumstance claim and the unlawful nature of his custody is absent, the Court does not have jurisdiction to hear this claim. Accordingly, Petitioner's first claim for relief must be dismissed.

(ECF No. 20 at 12–13 (footnote in original)). On May 3, 2016, the findings and recommendation was adopted in full. (ECF No. 24).

On June 6, 2016, Petitioner filed a notice of appeal. (ECF No. 26). On May 4, 2017, the Ninth Circuit granted Petitioner's request for a certificate of appealability with respect to whether there was sufficient evidence to support the gang-murder special circumstance. (ECF No. 31).

While Petitioner's appeal was pending in the Ninth Circuit, Petitioner filed a state habeas petition in the superior court challenging the sufficiency of the evidence of the robbery-murder special circumstance. (Mot. to Amend Ex. A, ECF No. 58-1). On November 25, 2019, the superior court denied relief in a reasoned decision. (Id. Ex. A2, ECF No. 58-2). Petitioner then filed a state habeas petition in the California Court of Appeal, which denied the petition on March 12, 2020 with citation to People v. Banks, 61 Cal. 4th 788 (2015). (Id. Ex. B & C, ECF

---

³ The Court notes that the robbery-murder special circumstance is an independent and sufficient basis for imposition of a sentence of life without the possibility of parole. See Cal. Pen. Code § 190.2(a)(17)(A).

5

1  Nos. 58-3 & 58-4). Thereafter, Petitioner filed a petition for review in the California Supreme
2  Court, which summarily denied the petition on June 17, 2020. (Id. Ex. H, ECF No. 58-9).
3        On August 5, 2020, the Ninth Circuit affirmed this Court's conclusion that it lacked
4  jurisdiction under 28 U.S.C. § 2254(a) to hear a federal habeas challenge to the gang-murder
5  special circumstance because "regardless of the outcome of Salas's federal habeas challenge to
6  the gang-murder special circumstance, the length of his custody would not change and he 'would
7  still have to serve the rest of his custodial sentence in the same manner.'" (ECF No. 39 at 3
8  (quoting Bailey v. Hill, 599 F.3d 976, 981 (9th Cir. 2010)). However, the Ninth Circuit
9  remanded the matter "to allow the district court to consider *in the first instance* whether Salas
10 should be permitted to file an amended petition to include" "his newly exhausted challenge to the
11 robbery-murder special circumstance." (ECF No. 39 at 3 (emphasis added)). The Ninth Circuit
12 did not discuss whether any amendment would be appropriate or timely, but did note that "[i]f
13 the district court concludes that amendment is appropriate, such that Salas's challenges to both
14 special circumstance findings are properly before the court, it may reconsider its prior
15 jurisdictional ruling." (Id.).
16       On May 24, 2021, Petitioner filed the instant motion to amend the petition. (ECF No. 56).
17 Respondent filed an opposition, and Petitioner filed a reply. (ECF Nos. 64, 65).

**II.**

**DISCUSSION**

20       Here, Petitioner moves to amend the petition to include a newly exhausted claim
21 challenging the sufficiency of the evidence to support the robbery-murder special circumstance.
22 (ECF No. 56 at 26). Respondent opposes the motion, arguing that: (1) Petitioner must first satisfy
23 Rule 60(b) in order to amend; (2) a Rule 60(b) motion would constitute an unauthorized second
24 or successive petition; and (3) Petitioner fails to satisfy Rule 15 due to unjustifiable delay and
25 futility. (ECF No. 64).

26   **A. Rule 60(b)**

27       Respondent argues that "[i]n order for Petitioner to bring a Rule 15 motion to amend, as
28 he has done here, he must first have the original district court judgment set aside under Rule

60(b)." (ECF No. 64 at 14). Petitioner contends that Rule 60 is inapplicable in light of the Ninth Circuit's remand order. (ECF No. 65 at 10).

With respect to the different standards governing amendments under Rule 15 and relief from judgment under Rule 60, the Ninth Circuit has stated:

> In contrast to the "freely give[n]" dispensation to amend in Rule 15, Rule 60(b) relief should be granted "sparingly" to avoid "manifest injustice" and "*only* where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) (emphasis added). "Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *Id.* After judgment, then, "our policy of promoting the finality of judgments" somewhat displaces Rule 15's openhandedness. *Lindauer*, 91 F.3d at 1357.

Navajo Nation v. Dep't of the Interior, 876 F.3d 1144, 1173 (9th Cir. 2017).

Generally, "after final judgment has been entered, a Rule 15(a) motion may be considered only if the judgment is first reopened under Rule 59 or 60." Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996). However, there is authority that if a district court requests a court of appeals to remand a case for consideration of a post-judgment motion for leave to amend, "the remand order will be viewed as comparable to a vacation of the lower court's judgment." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1489 (3d ed.) (citing Markert v. Swift & Co., 173 F.2d 517 (2d Cir. 1949)).[4]

The Court assumes, without deciding, that in light of the Ninth Circuit's remand order, Rule 60 is inapplicable in this instance. Therefore, Petitioner may bring a motion to amend without first satisfying Rule 60(b), and the Court will proceed to determine whether leave to amend is warranted under Federal Rule of Civil Procedure 15.

**B. Rule 15**

---

[4] In Markert, the plaintiffs filed a notice of appeal of the district court's dismissal order. Thereafter, the plaintiffs moved in the district court for leave to amend, a district judge requested the court of appeals to remand the case to the district court for consideration of the motion to amend, and the court of appeals complied. 173 F.2d at 519. The Second Circuit noted that although "[t]echnically the judgment of dismissal should be reopened before an amendment to the complaint is granted," "resort . . . to Rule 60 seems hardly necessary [because the Second Circuit's] order for remand would seem to supply all that is needed . . . and amount in itself to a vacation of the judgment for further proceedings, including amendments under" Rule 15. Id. at 520.

7

A party may amend its pleading once as a matter of course within 21 days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1). But "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). See Mayle v. Felix, 545 U.S. 644, 655 (2005) (noting Federal Rule of Civil Procedure 15 is applicable to habeas proceedings).

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court may decline to grant leave to amend "if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, Respondent argues that because Petitioner's new claim is untimely, amendment should be denied as futile. (ECF No. 64 at 24). "Futility alone can justify a court's refusal to grant leave to amend." Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)). And the Ninth Circuit has held that a district court does "not abuse its discretion in denying leave to amend, [if] the . . . potential amended claim would still be barred by the statute of limitations." Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997).

1. Commencement of Limitation Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) applies and the limitation period begins running on the date that the petitioner's direct review became final. Although Petitioner states that "his newly exhausted claim is timely because it relates back into the original timely filed petition," (ECF No. 65 at 14), and does not provide arguments for a later commencement of the limitation period, the Court will nevertheless determine whether Petitioner is entitled to a later trigger date.

Here, Petitioner challenges the robbery-murder special circumstance in light of People v. Banks, 61 Cal. 4th 788 (2015), and People v. Clark, 63 Cal. 4th 522 (2016),[5] and asserts that he could not have launched a meaningful challenge to the robbery-murder special circumstance until passage of California Senate Bill 1437 ("SB 1437"),[6] which became effective on January 1, 2019. (ECF No. 65 at 9–10).

A modification or clarification of state law does not constitute an "impediment" under 28 U.S.C. § 2244(d)(1)(B) or a "factual predicate" under § 2244(d)(1)(D) that would warrant a later commencement of the limitation period. Shannon v. Newland, 410 F.3d 1083, 1087–89 (9th Cir.

---

[5] Banks and Clark "clarified the meaning of the [robbery-murder] special circumstances statute," California Penal Code section 190.2(d). In re Scoggins, 9 Cal. 5th 667, 671 (2020).

[6] "The Legislature enacted SB 1437 to 'amend the [felony-murder] rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" People v. Bucio, 48 Cal. App. 5th 300, 307 (2020) (quoting Stats. 2018, ch. 1015, § 1, subd. (f)). "SB 1437 also added section 1170.95, which permits those convicted of felony murder or murder under the natural and probable consequences doctrine to file a petition with the sentencing court to vacate the murder conviction and resentence on any remaining counts." Id.

9

2005). In Shannon, the Ninth Circuit found that the "text of § 2244(d)(1)(B) cannot bear [the] construction" that "[w]henever a state court clarified its own substantive or procedural law, any prisoner convicted under the understanding of the state's legal standard or procedure previously prevailing in state courts—no matter how long ago he was convicted—would be free to file a federal habeas petition." Id. at 1088. Shannon also noted that "[i]f a change in (or clarification of) state law, by a state court, in a case in which [a petitioner] was not a party, could qualify as a 'factual predicate,' then the term 'factual' would be meaningless" and "would create a large loophole in AEDPA's scheme to promote finality." Id. at 1088, 1089. Moreover, courts have specifically found that Banks does not trigger a later start date under § 2244(d)(1)(D). See, e.g., Lamar v. Adams, No. 2:16-cv-1269 AC P, 2017 WL 1540175, at *3 (E.D. Cal. Apr. 28, 2017); Siqueiros v. Beard, No. CV 16-2939-MWF(E), 2016 WL 7911913, at *6 (C.D. Cal. Aug. 23, 2016), report and recommendation adopted, 2017 WL 277567 (C.D. Cal. Jan. 19, 2017).

Additionally, as Banks, Clark, and SB 1437 do not implicate constitutional rights newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review, § 2244(d)(1)(C) is inapplicable. See, e.g., Acosta v. Lynch, No. 3:20-cv-02039-WQH-AHG, 2021 WL 2863006, at *2 (S.D. Cal. July 8, 2021) (holding that "since Banks and Clark were both decided by the California Supreme Court, Petitioner is not entitled to a later start date of the statute of limitations" under § 2244(d)(1)(C)).

As §§ 2244(d)(1)(B)–(D) are inapplicable, the limitation period began running from the date that Petitioner's direct review became final on October 21, 2014, when the ninety-day period to file a petition for writ of certiorari in the United States Supreme Court expired. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Pursuant to § 2244(d)(1)(A), the one-year limitation period commenced running the following day, October 22, 2014, and absent tolling, was set to expire on October 21, 2015. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).

2. Statutory Tolling

The "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted

10

toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). Although Petitioner filed his federal habeas petition in 2015, the limitation period is not tolled during the pendency of a federal habeas petition. Duncan v. Walker, 533 U.S. 167, 181–82 (2001). In the instant case, the limitation period expired before Petitioner filed his first state habeas petition on July 11, 2019, and § 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed." Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner is not entitled to statutory tolling.

### 3. Equitable Tolling

The limitation period also is subject to equitable tolling if the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Petitioner bears the burden of alleging facts that would give rise to tolling. Holland, 560 U.S. at 649; Pace, 544 U.S. at 418.

Petitioner argues that ineffective assistance of appellate counsel for failing to attack the robbery-murder special circumstance on direct appeal "coupled with the sheer lack of state-level counsel since then, as well as the rapidly changing laws, are extraordinary circumstances that establish cause for equitable tolling of the statute of limitations." (ECF No. 65 at 10).

Neither lack of counsel nor a change in law warrants equitable tolling. See Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (holding that "pro se status, a prison library that was missing a handful of reporter volumes, and reliance on helpers who were transferred or too busy to attend to his petitions" were "hardly extraordinary given the vicissitudes of prison life" and did not warrant equitable tolling); Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); Shannon, 410 F.3d at 1090 (rejecting contention that time between petitioner's conviction and a state court decision clarifying state law in a way potentially favorable to petitioner's federal constitutional claim should be equitably tolled because such an "argument would open the door for any state prisoner to file a habeas petition anytime a state court issues a clarification of state law. Such an interpretation cannot be squared

with the goals of finality that are central to AEDPA."); Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (en banc) (rejecting equitable tolling claim because the "standard announced in Holland . . . focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant's control prevented him from filing within the limitations period at all" (citing Shannon, 410 F.3d at 1090)).

Additionally, "[n]ot all attorney mistakes qualify as a basis for equitable tolling," Luna v. Kernan, 784 F.3d 640, 646 (9th Cir. 2015), and "if an extraordinary circumstance is not the cause of a litigant's untimely filing, then there is nothing for equity to address," Smith v. Davis, 953 F.3d 582, 591 (9th Cir. 2020) (en banc), cert. denied, 141 S. Ct. 878 (2020). Here, Petitioner argues that ineffective assistance of appellate counsel for failing to attack the robbery-murder special circumstance on direct appeal constitutes an extraordinary circumstance. However, Petitioner has not established a causal link showing that appellate counsel's failure *prevented* Petitioner from timely filing a claim challenging the robbery-murder special circumstance. See Smith, 953 F.3d at 600 ("[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy."); Thurston v. Yates, 471 F. App'x 619, 620 (9th Cir. 2012) ("[T]here must be a causal link between the extraordinary circumstances and the inability to file a timely petition.").

Based on the foregoing, Petitioner is not entitled to equitable tolling, and Petitioner's proposed new claim is untimely unless it relates back to the claims in the original petition.

4. Relation Back

Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Interpreting Rule 15(c) in the context of AEDPA and the Rules Governing Section 2254 Cases, the Supreme Court has held that an amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. Rather, "relation back

depends on the existence of a common core of operative facts uniting the original and newly asserted claims." Id. at 659 (internal quotation marks and citations omitted).

In the original petition, Petitioner raised three claims for relief: (1) that there was insufficient evidence to support the gang-murder special circumstance and the appellate court erroneously declined to rule on this issue because a reversal would not change his sentence; (2) that after ruling that the defense failed to make a prima facie case of racial discrimination in the prosecution's exercise of peremptory challenges of certain jurors, the trial court invited the prosecutor to comment on the reasons for striking said jurors and improperly granted the request to file the reasons under seal; and (3) that the trial court erroneously denied Petitioner's motion to sever his trial. (ECF No. 1). Petitioner now seeks to amend the petition to include a claim challenging the sufficiency of the evidence to support the felony-murder special circumstance. Petitioner asserts that there was insufficient evidence to establish that Petitioner was a major participant in the underlying felony acting with reckless disregard for life. (ECF No. 56 at 26; ECF No. 56-1 at 24).

Petitioner states in conclusory fashion that "his newly exhausted claim . . . relates back into the original, timely petition . . . by sharing a 'common core of operative facts." (ECF No. 65 at 14). However, Petitioner does not provide further explanation or support of this assertion and has not established that there is a common core of operative facts uniting the claims of the original petition and the new claim challenging the sufficiency of the evidence to support the robbery-murder special circumstance. Although the Court recognizes that a challenge to the robbery-murder special circumstance is procedurally crucial to establish standing on the challenge to the gang-murder special circumstance, this is not sufficient to establish that the two claims share a common core of operative facts. See Ram v. Cty. of Sacramento, 738 F. App'x 571 (9th Cir. 2018) ("In order for [petitioner]'s amended petition to relate back to the date of the original, there must be 'a common core of operative facts uniting the original and newly asserted claims.' We do not look to the legal theory underlying a claim, but to the facts on which it is based." (citations omitted)).

Petitioner's original sufficiency of the evidence claim challenged the gang-murder special

13

circumstance, centering on the "dearth of evidence relating to [Petitioner]'s recent involvement in the Varrio Bakers and no evidence of his active involvement" and the fact that "the prosecution presented no predicate offenses relating to the Varrio Bakers and there was no evidence connecting the Varrio Bakers to the present offense." (ECF No. 1 at 34). The original sufficiency of the evidence claim focuses on Petitioner's relationship, involvement, and knowledge (or lack thereof) regarding the Varrio Bakers and the lack of connection between the gang and the offense. In contrast, Petitioner's proposed sufficiency of the evidence claim challenging the robbery-murder special circumstance focuses on Petitioner's personal participation in the offense and whether he knowingly engaged in a robbery that he knew involved a grave risk of death.

As each sufficiency of the evidence claims rests on "separate congeries of facts," Mayle, 545 U.S. at 661, "that differ in both time and type," id. at 650, the undersigned finds that Petitioner's proposed sufficiency of the evidence claim challenging the felony-murder special circumstance does not "relate back" to the claims presented in Petitioner's original petition and thus, is untimely. Therefore, there is no basis for granting leave to amend the petition. See Naas, 130 F.3d at 893 ("[T]he district court did not abuse its discretion in denying leave to amend, as the . . . potential amended claim would still be barred by the statute of limitations.").

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that Petitioner's motion to amend (ECF No. 56) be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, Petitioner may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

§ 636(b)(1)(C). Petitioner is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 16, 2021**                              /s/ Erica P. Grosjean
                                                                               UNITED STATES MAGISTRATE JUDGE