**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PABLO SALAS,<br><br>        Petitioner,<br><br>    v.<br><br>M.D. BITER,<br><br>        Respondent. | No. 1:15-cv-00831-JLT-EPG-HC<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS, DENYING MOTION TO AMEND, DIRECTING CLERK OF COURT TO CLOSE CASE, AND ISSUING CERTIFICATE OF APPEALABILITY**<br><br>(Doc. 56, 66) |

### I.     INTRODUCTION

Pablo Salas is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On August 16, 2021, the assigned magistrate judge issued findings and recommendations recommending that Petitioner's motion to amend be denied, finding, among other things, that his proposed new claim is untimely because it does not relate back to the claims presented in Petitioner's original petition and because equitable tolling does not apply. The magistrate judge assumed, without deciding, that Rule 60 is inapplicable in this instance given the Ninth Circuit's remand order. (Doc. 66.) Petitioner filed timely objections, and respondent filed a reply to Petitioner's objections. (Docs. 67, 68.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), the Court has conducted a

*de novo* review of the case. Having carefully reviewed the entire file, including Petitioner's objections, the Court will **ADOPT THE FINDINGS AND RECOMMENDATIONS IN FULL**, **DENY** the motion to amend, and issue a certificate of appealability.

## II.     DISCUSSION

**A.     Relation Back of Newly Asserted Claim**

Petitioner objects that the relation back doctrine should apply to his newly asserted claim. (Doc. 67 at 15.) Some background is necessary to explain why this objection is not well founded.

   1.   Relevant Procedural History

In 2011, Petitioner was convicted in Kern County Superior Court on three counts: first-degree murder, robbery, and active participation in a criminal street gang. *See generally People v. Casica*, No. F063191, 2014 WL 1386677, at *1 (Cal. Ct. App. Apr. 9, 2014). As to Petitioner only, the jury found that the murder was not premeditated. *Id*. Petitioner and his co-defendant were acquitted of a conspiracy charge, and Petitioner was acquitted of on the charge of being a felon in possession of a firearm. *See id*. The jury also made several special circumstance findings. *Id.* As to the first-degree murder charge, the jury found that the murder was committed while Petitioner was engaged in a robbery (referred to variously in the record as the "robbery-murder special circumstance" or the "felony-murder special circumstance"). *Id*. The jury also found true the additional special circumstances that Petitioner used a firearm in the commission of the offenses and that he committed the offenses for the benefit of a criminal street gang. *Id*. Petitioner was sentenced to life without the possibility of parole plus 25 years to life. *Id*.

On appeal, the California Court of Appeal, Fifth Appellate District, reversed the active participation in a criminal gang *offense* (alternatively referenced as the "gang participation offense") conviction because, though there was evidence that Petitioner and his co-defendant "were members of separate criminal street gangs, namely the Varrio Bakers and South Side Bakers,"[1] there was no evidence that they were members of the *same* gang. *Id*. at *9. Therefore,

---

[1] As the California Court of Appeals explained in a detailed footnote, at trial both Petitioner and his co-defendant stipulated that the Varrio Bakers and South Side Bakers were "criminal street gangs" under Cal. Penal Code 186.22. 2014 WL 1386677, at *8 n.4. Petitioner argued in that appeal that the stipulation was insufficient to support his conviction on the gang participation offense because it failed to delineate that the gangs participated in a pattern of criminal gang activity. *Id*. The court disagreed, finding that the stipulation encompassed the fact that the gangs

1   "the evidence was insufficient to support a finding defendants engaged in the gang participation
2   offense with another member of their own gang." *Id*. (citing *People v. Rodriguez*, 55 Cal. 4th
3   1125 (2012) (holding that violation of the gang participation offense requires proof the "felonious
4   criminal conduct be committed by at least two gang members, one of whom can include the
5   defendant if he is a gang member")).

6         The California Court of Appeals affirmed in all other respects, leaving undisturbed *all* of
7   the special circumstance findings. *See generally id*. Of note, Petitioner had argued in his state
8   court appeal that the evidence was insufficient to support the *gang-murder* special circumstance
9   finding because the evidence did not establish that he had knowledge of the criminal purpose of
10  his gang; that the murder was carried out to further the gang's activities; that he was an active
11  participant in the gang; or that he benefitted from the murder. *Id*. at *9. The state appellate court
12  did not reach the substance of these arguments, finding instead that any such error was
13  "harmless" because Petitioner's life without parole sentence was premised upon the separate
14  *robbery-murder* special circumstance[2] finding. *Id*. at *10.

15        Petitioner's original federal habeas petition contained three claims: (1) that there was
16  insufficient evidence to support the gang-murder special circumstance and the appellate court
17  erroneously declined to rule on this issue because a reversal would not change his sentence; (2) that
18  after ruling that the defense failed to make a prima facie case of racial discrimination in the
19  prosecution's exercise of peremptory challenges of certain jurors, the trial court invited the prosecutor
20  to comment on the reasons for striking said jurors and improperly granted the request to file the
21  reasons under seal; and (3) that the trial court erroneously denied Petitioner's motion to sever his trial.
22  (Doc. 1 & Ex. A.)

23        As relevant here, this Court did not reach the merits of the first claim, but instead
24  dismissed the petition for lack of jurisdiction, finding no nexus between either of the challenged
25  enhancements and Petitioner's custody, because his life without the possibility of parole sentence
26  was premised solely on the separate *robbery-murder* (i.e., the felony-murder) special

---

27  engaged in a pattern of criminal gang activity. *Id*.

28  [2] No challenge to the robbery-murder special circumstance finding was raised on direct appeal.

circumstance finding. (Docs. 20 at 12–13; Doc. 24.)[3] Petitioner appealed. (Doc. 26.)[4]

While the appeal was pending, Petitioner filed a state habeas petition challenging the sufficiency of the evidence of the robbery-murder special circumstance finding. (Doc. 58-1.) Relying on the relatively new California Supreme Court decision in *People v. Banks*, 61 Cal. 4th 788 (2015), Petitioner argued that the felony-murder special circumstance finding was "not supported by sufficient evidence that he, a non-killer, was a major participant in the underlying felony acting with reckless disregard for life." (*Id*. at 8.) Petitioner argued:

> After the California Supreme Court denied review, on July 23, 2014, the court narrowed the scope of the felony-murder special circumstance in *People v. Banks* (2015) 61 Cal. 4th 788, and *People v. Clark* (2016) 63 Cal. 4th 522. . . . A non-killer is subject to the felony-murder special circumstance if he intended to kill or acted with "reckless indifference to human life" and was a "major participant" in the underlying felony. ([Cal. Penal Code] § 190.2, subd. (d); *People v. Estrada* (1995) 11 Cal. 4th 568, 575.)
> "Reckless indifference to human life" means "the defendant was subjectively aware that his or her participation in the felony involved a grave risk of death." (*Estrada*, 11 Cal. 4th at 577, 580.) Whether a defendant was a major participant is judged on a spectrum based on all the circumstances of the case. (*Banks*, 61 Cal. 4th at 805-807.)
> ***
> In *Banks*, the California Supreme Court identified factors to be considered in determining whether a non-killer is sufficiently culpable to be eligible for the death penalty:[5]
>
> > What role did the defendant have in planning the criminal

---

[3] Petitioner's second and third claims were denied on the merits. (*See* Docs. 20, 24.)

[4] California Senate Bill 1437 ("SB 1437"), which became effective on January 1, 2019, amended "the [felony-murder] rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" *People v. Bucio*, 48 Cal. App. 5th 300, 307 (2020) (quoting Stats. 2018, ch. 1015, § 1, subd. (f)). "SB 1437 also added section 1170.95, which permits those convicted of felony murder or murder under the natural and probable consequences doctrine to file a petition with the sentencing court to vacate the murder conviction and resentence on any remaining counts." *Id*.

At oral argument, the Ninth Circuit expressed interest in the effect of SB 1437 on Petitioner. In particular, the Ninth Circuit indicated concern that Petitioner might be placed in a "Catch-22" if he attempted to exhaust a challenge to the felony-murder special circumstance finding in state court because of the possibility that the State would argue that there is no reason to reach the felony-murder special circumstance issue because the gang participation enhancement is still in place. *See* Oral Argument, Pablo Salas v. M. Biter 16-16019, https://www.ca9.uscourts.gov/media/audio/?20190206/16-16019/ (at approximately minutes 17:30-19:00).

[5] As Petitioner pointed out in his 2019 state habeas petition, the standard from *Banks* applies with equal force in non-capital cases because both options (capital and non-capital sentences) arise out of the same provision of California law: Cal. Pen. Code § 190.2(d). (Doc. 58-1 at 14 (citing *Estrada*, 11 Cal. 4th at 575–76).)

> enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a role in the death? What did the defendant do after lethal force was used?

(*Banks*, 61 Cal. 4th at 803.)

(*Id*. at 13–15.) Petitioner maintained he was insufficiently culpable under this standard because:

> The jurors here found that Casica was the killer, not Salas. It appears from the cell phone evidence that Salas was not present when Casica killed Kelch. In several text messages between 10:32 and 11:04 p.m., Casica indicated he intended to "dome" Kelch, meaning shoot her in the head. Salas said: "No dome" and "I got a plan." [ ] Salas was apparently trying to persuade Casica not to shoot Kelch. There was insufficient evidence he was a major participant in the robbery who acted with reckless indifference. Thus, the felony-murder special circumstance should be vacated.

(*Id*. at 16.)

On November 25, 2019, the Superior Court denied the petition in a reasoned decision. (Doc. 58-2.) The Superior Court evaluated the sufficiency of the evidence from several perspectives, including by examining the *Banks* factors, as follows:

> The jury instruction used in Petitioner's trial set forth what the people must prove to establish a finding of special circumstance. The CALCRIM jury instruction #703 parrots the wording of Penal Code § 190.2. The prosecutor was required to prove either that Petitioner had the intent to kill the victim or acted with reckless disregard to human life. The instruction sets forth that, reckless disregard for human life can be shown by all of the following:
>
> > 1. the defendant's participation in the crime began before or during the killing;
> >
> > 2. The defendant was a major participant in the crime; and
> >
> > 3. When the defendant participated in the crime, he acted with reckless indifference to a human life - knowingly engaged in criminal activity that he knows involves a grave risk of death.
>
> The evidence provided by the prosecutor supports both theories - Petitioner intended to kill or let the victim be killed and he had a reckless disregard for her life.
>
> The prosecutor set forth both Petitioner and Casica's need for

5

money- Casica needed money for his girlfriend and his child and Petitioner needed money to help his sister get an apartment, as she had been evicted and had to leave her apartment by four days after the murder.

The evidence showed that Casica knew the victim's boyfriend had rifles at the house prior to the murder. The evidence showed Casica had spoken with someone prior to the murder about the value of what, arguably, was guns. Casica was looking for someone to rob and bullets shortly before the murder.

When the victim texted Casica to come over the night of the robbery/murder, he indicated to the victim that he was bringing a friend.

The cell phone texts between Casica and Petitioner around 11 p.m. while both men were in the victim's house with the victim and her son, are very telling. Casica texts Petitioner that he has "2 DOME HER" - meaning shoot the victim in the head. Petitioner responded: "To much eyes in the naborhood but we can do that unsuspected after." Contrary to Petitioner's position, he was not trying to talk Casica out of shooting the victim in the head, only out of doing it at that time of night. It was a quiet neighborhood and a gunshot would attract attention. Petitioner did not text Casica not to shoot the victim at all, only not to do it at that time of night. He did not disagree that the victim had to be shot. He concluded **they** could do it "unsuspected". A jury could conclude Petitioner had the intention to kill the victim, whether he was the shooter or not. There was also evidence that Petitioner texted Mike Zimmerman (person who gave him a ride to buy more drugs) while he was still at the victim's house that he had a plan to reup (get drugs) and take care of you guys (Casica and Zimmerman) get back here and take care of things here. Easily the jury could conclude "taking care of things here" would involve killing the victim or helping kill the victim or helping Casica get away if he went through with the killing.

As far as reckless indifference, Petitioner had the intent to help Casica get the guns when he arrived at the victim's house. He was not shocked by the text from Casica about killing the victim. His participation in the robbery began when he and Casica walked into the victim's house. He was a major participant in the crime. The *Banks* court set forth how to determine a co-defendant's involvement in a crime as follows:

> *What role did the defendant have in planning the criminal enterprise that led to one or more deaths?* We don't know.
>
> *What role did the defendant have in supplying or using lethal weapons?* We don't know.
>
> *What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?* Both co-defendants had gang affiliations. Petitioner did not seem surprised that Casica planned to shoot anyone.

6

> *Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?* It is unknown whether Petitioner was present when the victim was shot. He did nothing to prevent it and his text regarding doing it "unsuspected after" implicates him. The victim was not shot around 11 a.m. when the texts regarding doming her were exchanged. Petitioner left the house around 3 a.m. with Zimmerman shortly after texting him that he had a plan to get back and "take care of things here". Both Casica and Petitioner were running out of the house around 5 a.m. with rifles and a Play Station 3. It would be reasonable for the jury to conclude that the victim was shot sometime after Petitioner arrived back at the house around 4 a.m. and when he and Casica were running from the house around 5 a.m.
>
> *What did the defendant do after lethal force was used?* Petitioner did not call the police, but was running from the home. He indicated that he would pay the woman that picked him up at the house for gas money after he sold the Play Station 3.
>
> With all that evidence, the jury could conclude that Petitioner acted with reckless disregard for human life and knowingly engaged in criminal activity that involved a grave risk of death.

(Doc. 58-2 at 3–4.)

On March 12, 2020, the California Court of Appeal likewise denied the petition in a single sentence decision, citing to *Banks*, 61 Cal. 4th 788. (Doc. 58-1.) The California Supreme Court summarily denied the petition. (Doc. 58-9.)

On August 5, 2020, the Ninth Circuit affirmed this Court's conclusion that it lacked jurisdiction to hear the original federal habeas petition because "regardless of the outcome of Salas' federal habeas challenge to the gang-murder special circumstance, the length of his custody would not change." (Doc. 39 at 3.) However, the Ninth Circuit remanded the matter for this Court to consider whether Salas should be permitted to file an amended petition to include his newly exhausted challenge to the robbery-murder special circumstance. (*Id*.) The Ninth Circuit expressed no view as to whether leave to amend should be granted. (*Id*.)

On March 24, 2021, Petitioner filed his motion to amend. (Doc. 56.) In Claim 2 of his proposed first amended petition, Petitioner asserts there was insufficient evidence to support the felony-murder special enhancement. (Doc. 56-1, ¶¶ 73–82.) Petitioner argues that the Superior

7

Court's November 25, 2019 decision denying his *Banks/Clark* challenge to the felony-murder special circumstance finding "is based on an unreasonable finding of fact, namely, that Salas had gang affiliation." (Doc. 56 at 20.) Petitioner contends this was unreasonable because "Salas made clear that the Court of Appeal had vacated the standalone gang activities conviction (Count 5); that accordingly, he claimed the evidence was insufficient to support the gang-murder special circumstance; [and] that this same challenge was pending before the Ninth Circuit Court of Appeals, after they had certified that issue." (*Id.*; *see also* 56-1 at ¶¶ 73–83.) Petitioner also argues in his proposed claim that the state court's denial of this claim was unreasonable because it failed to:

> [G]ive proper deference to the jury's verdicts, to wit: acquittal of the charge of conspiracy (Count 1); acquittal of the charge that Salas was a felon in possession of a firearm (Count 4); and finding that Salas did not premeditate the homicide. The verdicts necessarily hold that Salas and Casica did not jointly preplan the murder, and further, that Casica was the actual killer, and Salas did not have a firearm in his possession or control.
>
> Furthermore, the Superior Court's decision (Exh. A2) is unreasonable in its failure to take into account that, at the time of the offense, Salas was in late adolescence (age 25) (see Pen. Code §3051), which affected his capacity to act with reckless indifference.

(Doc. 56 at 20; *see also* 56-1 at ¶¶ 76–77.)

2. Relation Back Doctrine

Under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, an otherwise untimely amended pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See Ross v. Williams*, 950 F.3d 1160, 1166 (9th Cir. 2020) (*en banc*). A petitioner "may amend a new claim into a pending federal habeas petition after the expiration of the limitations period only if the new claim shares a 'common core of operative facts' with the claims in the pending petition*.*" *King v. Ryan*, 564 F.3d 1133, 1141 (9th Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. [644,] 659 [(2005)]). A new claim does not relate back "simply because [it is] relat[ed] to the same trial, conviction, or sentence as the timely-filed claim." *Mayle*, 545 U.S. at 662. Rather, it must be "based on the same facts as the original

8

1 pleading and only changes the legal theory." *Id*. at 664 n.7 (citation and internal quotation marks
2 omitted).

3       In determining whether an amended petition relates back to an original petition, a court
4 must first determine "what claims the amended petition alleges and what core facts underlie those
5 claims." *Ross*, 950 F.3d at 1167. Next, "for each claim in the amended petition, [the Court]
6 look[s] to the body of the original petition and its exhibits to see whether the original petition 'set
7 out' or 'attempted to . . . set out' a corresponding factual episode, *see* Fed. R. Civ. P. 15(c)(1)(B)
8 – or whether the claim is instead 'supported by facts that differ in both time and type from those
9 the original pleading set forth.'" *Id*. (quoting *Mayle*, 545 U.S. at 650, 664). Further, the Ninth
10 Circuit has explained that, "[a]t a minimum, an original petition 'attempted to . . . set out' all facts
11 that supported a ground for relief asserted in the original petition. Those facts therefore could
12 provide the necessary correspondence for relation back." *Id*. (citing *Mayle*, 545 U.S. at 659-660
13 (explaining that an amendment that "invoked a legal theory not suggested by the original
14 complaint" could relate back to the original complaint because it arose out of the same "episode-
15 in-suit").

16       3. <u>Application of Relation Back Doctrine</u>

17       As mentioned, Petitioner's original federal habeas petition contained a claim that
18 challenged the gang-murder special circumstance finding, arguing there was "a dearth of evidence
19 relating to appellants recent involvement in the Varrio Bakers and no evidence of his active
20 involvement" and therefore that there was insufficient evidence to establish the "active
21 participation" element required to make the special circumstances finding. (Doc. 1 at 10, 33-34.)
22 Petitioner also pointed out that the parties had stipulated at the trial that the Varrio Bakers were a
23 street gang as defined by the relevant statute but had declined to stipulate that appellant had
24 knowledge of the gang's criminal purpose. (*Id*. at 34.) As a result of the stipulation, the
25 prosecution presented no evidence of predicate offenses relating to the Varrio Bakers, an
26 omission Petitioner argued resulted in a lack of evidence connecting the Varrio Bakers to the
27 charged offenses. (*Id*.) Viewing these assertions broadly, the facts underlying these arguments
28 relate to: (1) Petitioner's involvement in the Varrio Bakers, and, more specifically, how recent

1    and "active" that involvement may have been; and (2) whether the Varrio Bakers as a whole had a
2    "criminal purpose" and whether Petitioner had knowledge of such purpose.
3         Petitioner's amended claim argues *in part* that the Superior Court's November 25, 2019
4    decision denying his *Banks/Clark* challenge to the felony-murder special circumstance was based
5    on an unreasonable finding of fact:  that Salas had gang affiliation. (Doc. 56-1 at 20.)
6         The facts related to Salas' gang affiliation are indeed common to Salas's original and
7    amended claims. However, the fact that the claims "share one fact . . . is not sufficient to conclude
8    that they arise out of a common *core* of operative facts." *Schneider v. McDaniel*, 674 F.3d 1144,
9    1151 (9th Cir. 2012) (emphasis in original). Critically, Petitioner's proposed *Banks/Clark*
10   challenge to the robbery felony-murder special circumstance finding *also* relies on *numerous*
11   facts beyond petitioner's alleged gang affiliation. For example, as mentioned, the proposed claim
12   argues that the state court's denial of this claim was unreasonable because it failed to give proper
13   deference to the jury's verdicts, which "necessarily hold that Salas and Casica did not jointly
14   preplan the murder, and further, that Casica was the actual killer, and Salas did not have a firearm
15   in his possession or control," and failed "to take into account that, at the time of the offense, Salas
16   was in late adolescence (age 25) . . . which affected his capacity to act with reckless indifference."
17   (Doc. No. 56-1 at 25.)
18        Citing *Mayle*, the findings and recommendations concluded that the new claim does not
19   relate back to the original one because these additional facts "differ in both time and type" from
20   facts related to petitioner's alleged gang affiliation. (Doc. 66 at 14 (citing *Mayle*, 545 U.S. at
21   661)). *Mayle* is not a perfect analogue to the present case because the facts underlying the original
22   and newly asserted claims were entirely distinct in that case. Specifically, an original
23   Confrontation Clause claim concerned a witness' taped video statements, while a proposed new
24   Fifth Amendment claim concerned the defendant's own pretrial statements. 545 U.S. at 644, 657.
25        But what happens when there is some factual overlap between the two claims? The Ninth
26   Circuit addressed a somewhat similar situation in *Schneider*, 674 F.3d at 1151. There, the original
27   petition claimed that the petitioner's trial counsel had provided ineffective assistance by failing to
28   investigate his co-defendant's trial strategy, which would have led him to file a timely motion to

sever. In an amended petition, he claimed that the *trial court's* denial of his untimely motion to sever deprived him of due process. *Id*. at 1151. The Ninth Circuit broke down why the new claim did not relate back to the original one as follows:

> These two claims do not arise out of a common core of operative facts. The facts underlying the original claim were: (1) trial counsel failed to investigate [co-defendant's] trial strategy, (2) trial counsel failed to file a timely motion to sever, (3) trial counsel failed to file a timely motion to suppress testimony by [the co-defendant], and (4) [the co-defendant] testified at Schneider's trial. The facts underlying the amended claim are different: (1) trial counsel brought a motion to sever on the second day of trial, (2) the trial court denied the motion, and (3) [the co-defendant] testified at Schneider's trial. While both theories share one fact: that [the co-defendant] testified at Schneider's trial, this is not sufficient to conclude that they arise out of a common core of operative facts. Schneider's original theory was based on trial counsel's alleged failures. His amended theory is based on the trial court's alleged errors. The core facts underlying the second theory are different in type from the core facts underlying the first theory. *See Mayle*, 545 U.S. at 650. Therefore, relation back is not appropriate.

*Id*.; *see also Burch v. Baker*, No. 2:17-CV-00656-MMD-VCF, 2020 WL 1470963, at *4 (D. Nev. Mar. 26, 2020) (original claim was that the state failed to preserve exculpatory evidence because, among other things, the investigating detective's failed to seek out and question two potentially exculpatory witnesses, while the newly-asserted claim was that his trial counsel failed to try to locate, let alone call, those two witnesses; although these claims shared the one fact—that the witnesses might have provided exculpatory information—the factual underpinnings of the claims were "different in time and type" because the initial ground raised facts related to the detective's actions during the police investigation of the case while the new claim related to counsel's actions during the preparation of the case). *Schneide*r (and cases like *Burch* that follow *Schneider*) stand for the unsurprising proposition that relation back requires more than just some common facts.

Cases applying the relation back doctrine outside the habeas context provide additional guidance. These cases establish that *notice* is a key touchstone to the relation back analysis. The district court in *Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin*., provides a helpful summary of these authorities.

> "The relation back doctrine of Rule 15(c) is 'liberally applied.'" *ASARCO, [LLC v. Union Pac. R. Co*.], 765 F.3d [999,] 1004 [(9th Cir. 2014)] . . . . But a liberal application—"to provide maximum

11

opportunity for each claim to be decided on its merits rather than on procedural technicalities"—is balanced against the respect that must be accorded the purpose of statutes of limitation and recognition of the concern that "[a]mendments that significantly alter the pleadings could require the opposing party to start over and prepare the case a second time." *ASARCO*, 765 F.3d at 1005 (quoting 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1471 (3d ed. 1998)). The "conduct, transaction, or occurrence" test set forth in Rule 15(c)(1)(B) balances these concerns. *See ASARCO*, 765 F.3d at 1005.

"Although . . . the relation back doctrine of Rule 15(c) is to be applied liberally, there must nonetheless be some basis for application of the doctrine." *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 980 (9th Cir. 1988). The Rule "relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644[] (2005).

Thus, in performing the analysis Rule 15(c)(1)(B) requires, courts look to "whether the original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989); see also ASARCO, 765 F.3d at 1004; *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 n. 9 (9th Cir. 2008) ("The requirement that the allegations in the amended complaint arise from the same conduct, transaction, or occurrence is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading."); *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000) ("[A]s a leading treatise explains, '[t]he rationale of allowing an amendment to relate back is that once a party is notified of litigation involving a specific factual occurrence, the party has received all the notice and protection that the statute of limitation requires.'") (quoting *James Wm. Moore et al.*, Moore's Federal Practice § 15.19[1] (3d ed. 1999)); *Schwarzer, Tashima, et al.*, California Practice Guide: Federal Civil Before Trial ("Schwarzer & Tashima") § 8:1620, at 8–180 ("The basic inquiry is whether the opposing party was on notice of the nature of the claim raised by the amended pleading."). "Fairness to the defendant demands that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff." *Percy*, 841 F.2d at 979. "Rule 15 does not require that a pleading give notice of the exact scope of relief sought." *ASARCO*, 765 F.3d at 1006. "So long as a party is notified of litigation concerning a particular transaction or occurrence, that party has been given all the notice that Rule 15(c) requires." *ASARCO*, 765 F.3d at 1006; Percy, 841 F.2d at 979 ("[A]mendment of a complaint is proper if the original pleading put the defendant on notice of the 'particular transaction or set of facts' that the plaintiff believes to have caused the complained of injury.") (quoting Santana, 686 F.2d at 739).

In aid of the general focus on notice, "[w]hen a plaintiff seeks to amend a complaint to state a new claim against an original defendant . . . the court compares the original complaint with the

> amended complaint and decides whether the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *Percy*, 841 F.2d at 978 (quoting *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966)); *see also ASARCO*, 765 F.3d at 1004; *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Because the allegations and type of evidence necessary for O'Donnell to succeed on her EPA claims are identical to what she alleged in her second complaint, the December 1, 2003 amendment 'relates back' to the second complaint....") (omitting internal citation); *In re Dominguez*, 51 F.3d 1502, 1510 (9th Cir. 1995).

No. CV 12-9861-GW(SSX), 2016 WL 4650428, at *109–10 (C.D. Cal. Feb. 1, 2016).

Some courts in this Circuit have held that where a party must include "additional facts" in an amended pleading to support a new claim, relation back does not apply because there is no "common core of operative facts." This was the case in *Williams v. Boeing* Co., 517 F.3d 1120, 1133 (9th Cir. 2008), where the original claim was a promotion discrimination claim, while the amended complaint attempted to include a compensation discrimination claim. Because "different statistical evidence and witnesses would be used to prove the compensation and promotion discrimination claims because of the different processes [the defendant] use[d] to make salary and promotion decisions," relation back was not appropriate even though both claims involved allegations of racial discrimination. *Id.*; *see also Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018) (no relation back where original claim failed to allege facts essential to new claim).

Here, as mentioned, while the original and new claims have some common facts, namely the timing and extent of Petitioner's gang involvement, there are also indisputably "additional" facts in the newly asserted challenge to the felony-murder special circumstance finding. Specifically, the new claim also relies upon aspects of the jury's verdicts which, according to petitioner, "necessarily hold that Salas and Casica did not jointly preplan the murder, and further, that Casica was the actual killer, and Salas did not have a firearm in his possession or control," and the fact that "at the time of the offense, Salas was in late adolescence (age 25) . . . which affected his capacity to act with reckless indifference." (Doc. No. 56-1 at 25.) Though there is an argument that these facts may not be "essential" to the sufficiency of the evidence claim, the new claim necessitates a broad look at all the relevant facts. The overall lesson from the caselaw is that the addition of substantial new facts can run afoul of the notice requirement that underpins

13

the relation back rule. Indeed, the original claim's factual allegations related to gang involvement did not give notice to defendants that a later claim might possibly be filed that that encompasses a much broader range of facts, many of which have nothing to do with gang involvement. For this reason, the Court finds that the proposed claim challenging the sufficiency of the evidence in support of the felony-murder special circumstance finding does not relate back to the first claim in the original petition.

**B.     Equitable Tolling**

In the alternative, Petitioner objects to the magistrate judge's finding that equitable tolling does not apply to the newly asserted claim. (Doc. 67 at 15–18.) Petitioner weaves together several threads by arguing that (1) appellate counsel was ineffective for failing to attack the robbery-murder special circumstance on direct appeal and that this failure "coupled with [2] the sheer lack of state-level counsel since then, as well as [3] the rapidly changing laws," are extraordinary circumstances that establish cause for equitable tolling. (Doc. 65 at 10.) Petitioner also notes this case's "unique . . . postural state of remand from a Ninth Circuit panel that expressed grave concern about the equities." (Doc. No. 67 at 5.)

Petitioner's most facially compelling objection relates to the shifting legal landscape. He argues that the claim he now seeks to bring could not have been brought prior to the issuance of the *Banks* decision in 2016 "absent a prescient application of *Enmund v. Florida*, 458 U.S. 782 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987)]." (Doc. 65 at 5.)[6] *Enmund* and *Tison* were death penalty cases. Among other things, *Banks* made it clear that the rules generally set forth in *Enmund* and *Tison* applied to those sentenced to life without the possibility of parole. *See generally Banks*, 61 Cal. 4th 788. Petitioner contends that "before the enactment of SB 1437, it is doubtful whether even a skilled lawyer would or should have known that a *Banks/Clark* petition

---

[6] In *Enmund*, the United States Supreme Court held the death penalty was inappropriate for an accomplice who did not kill, attempt to kill, intend a killing take place, or intend for lethal force to be employed. 458 U.S. at 797. On the other end of the spectrum, *Tison* held that accomplices *could* be sentenced to death despite the fact they had not committed the killings or intended to kill where they had substantial involvement in the crimes by being "actively involved in every element" of the underlying felonies and were physically present during the entire sequence of criminal activity culminating in the murders. 481 U.S. at 158. This "high level of participation" implicated them in the resulting deaths. *Id*.

1   was called for, particularly [while Petitioner's] challenge to the gang murder special circumstance
2   was pending." (Doc. 65 at 6.) The Court shares Respondent's confusion in relation to this
3   argument.

4   As explained in *People v. Martinez*, 31 Cal. App. 5th 719, 723 (2019), relief is available
5   under California Penal Code § 1170.95—codified as a result of SB 1437's passage—where all
6   three of the following conditions are met: "(1) A complaint, information, or indictment was filed
7   against the petitioner that allowed the prosecution to proceed under a theory of felony murder or
8   murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was
9   convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu
10  of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶]
11  [and] (3) The petitioner could not be convicted of first or second degree murder because of
12  changes to Section 188 or 189 made effective January 1, 2019." Petitioner suggests his state
13  habeas petition challenging the sufficiency of the evidence to support the felony-murder special
14  circumstance under *Banks*/*Clark* is part of an attempt to "position himself" for relief under
15  § 1170.95. (*See* Doc. 65 at 9.) However, it is unclear to the Court how the enactment of SB 1437
16  "called for" the filing of a *Banks*/*Clark* petition in a way that was not already "called for" by
17  *Banks* or *Clark* directly.

18  Even assuming *Banks*/*Clark* <u>and</u> SB 1437 constitute developments in state law that made
19  Petitioner's challenge to the felony-murder special circumstance more viable, the findings and
20  recommendations evaluate this issue correctly considering *Shannon v. Newland*, 410 F.3d 1083,
21  1089–90 (9th Cir. 2005). There, the petitioner argued equitable tolling could be triggered by the
22  post judgment issuance of a state court decision clarifying state law in a way potentially favorable
23  to petitioner's federal constitutional claim. As the Ninth Circuit described it, Shannon's argument
24  was "that the state court prevented him from prevailing on a federal habeas claim," until the
25  subsequent decision was issued because "federal courts would have had to accept the California
26  courts' understanding of their own law." *Id*. at 1090. The Ninth Circuit rejected this argument
27  because it "would open the door for any state prisoner to file a habeas petition anytime a state
28  court issues a clarification of state law. Such an interpretation cannot be squared with the goals of

finality that are central to AEDPA." *Id*. The changing state law legal landscape is not a valid basis for equitable tolling.

Petitioner makes overlapping arguments that appellate counsel's errors and/or the lack of counsel during the habeas process warrant equitable tolling. The Court agrees with the findings and recommendations that: (1) Petitioner has failed to establish a causal connection between the asserted errors of appellate counsel (in failing to challenge the felony-murder special circumstances) and Petitioner's failure to raise that claim in the habeas context; and (2) lack of counsel is not a valid ground for equitable tolling. (Doc. 66 at 12.)

Finally, the procedural posture of this case—described by the Ninth Circuit as a potential "Catch 22" caused by the fact that the continued validity of one special circumstance finding may have made it difficult or impossible for Petitioner to challenge the other—does not change the equitable tolling analysis. Equitable tolling is appropriate where the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance *stood in his way' and prevented timely filing*." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (emphasis added). Nothing in the record suggests that the potential "Catch 22" had any bearing on whether Petitioner could have or did include a challenge to the felony murder special circumstance in his initial habeas petition. In short, the fact that the procedural situation has now created a potential Catch-22 does not establish that equitable tolling is appropriate

Plaintiff suggests that all the above-described factors operated in concert to create an extraordinary circumstance warranting application of equitable tolling. (*See* Doc. 65 at 10 ("[I]neffective assistance, coupled with the sheer lack of state-level counsel since then, as well as the rapidly changing laws, are extraordinary circumstances that establish cause for equitable tolling of the statute of limitations.")). Again, the Court does not see it this way because none of the identified circumstances constitute an impediment to Petitioner having timely filed a challenge to the felony-murder special circumstance. Thus, the Court concludes that equitable tolling does not apply to Petitioner's proposed new claim.

C. **Certificate of Appealability**

The court now turns to whether a certificate of appealability should issue. *See* Rule 11,

Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of relief, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253. The court should issue a certificate of appealability if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). In the present case, the court finds that it is possible reasonable jurists could disagree as to the application of the relation back doctrine and equitable tolling. The relation back analysis was close and difficult, and it is likewise possible that a reasonable jurist—particularly at the appellate level—could find a pathway to affording Petitioner relief under the equitable tolling caselaw. Accordingly,

1. The findings and recommendations issued on August 16, 2021 (Doc. No. 66) are **ADOPTED IN FULL**.
2. Petitioner's motion to amend (Doc. No. 56) is **DENIED**.
3. The Clerk of Court is directed to close this case; and
4. The Court issues a certificate of appealability as to the following issues:
   a. Whether the newly asserted sufficiency of the evidence challenge to the felony-murder special circumstance finding relates back to the original challenge to the gang special circumstance finding.
   b. Whether equitable tolling applies to render the newly asserted claim timely.

IT IS SO ORDERED.

Dated:   **November 1, 2022**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE